IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 15-31952-H1-11 |
| 2555 N. MACGREGOR, L.L.C., | § | |
| Debtor | § | Chapter 11 |

## DEBTOR'S FOURTH AMENDED DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION

COMES NOW 2555 N. MacGregor, L.L.C. (the "Debtor" or at times, "Reorganized Debtor") and proposes this Fourth Amended Disclosure Statement and Plan of Reorganization (the "Plan") pursuant to §§ 1121 and 1125 of the Bankruptcy Code.

## I.    INFORMATION REGARDING THE DEBTOR

### A.  The Debtor

The Debtor is a Texas limited liability company with its principal place of business at 2555 N. MacGregor Way, Houston, Texas 77004. Where appropriate, references to the Debtor shall mean the reorganized debtor.

### B.  Brief History of the Debtor and Cause of the Debtor's Chapter 11 Filing

The Debtor is a single-member limited liability company owned by Sean Roberts, a litigation and personal injury attorney. The Debtor owns a commercial building located at 2555 N. MacGregor Way, Houston, Texas 77004 (the "Property" or the "Building") and leases out the offices therein. The Debtor has no other business activity.

Although the Property has several operable office suites, the construction of the Property is not completely finished. The Debtor estimates that the construction of the Property will be complete within six to nine months. The Property has also required several unexpected repairs,

including repair of the air conditioning and water leaks.

One of the Debtor's primary tenants is Roberts' legal practice, The Roberts Law Firm. The Roberts Law Firm is primarily a litigation and personal injury firm and takes many of its cases on contingency. It recently was unable to collect one of the judgments it won because the defendant in the case went into receivership and was unable to pay its debts. This in turn caused The Roberts Law Firm to be unable to pay its rent to the Debtor.

The unexpected repairs and the collection problems encountered by The Roberts Law Firm caused the Debtor to become unable to pay the debts secured by the Property. The Debtor filed this chapter 11 case to avoid foreclosure of the Property and to obtain additional time to catch up the arrearages on amounts owed to Post Oak Bank on the loan secured by the Building.

The Roberts Law Firm made its monthly rental payments starting in July to the Debtor. The Roberts Law Firm made an additional payment of $2,500 in August and will make an additional payment of approximately $2,500 to the Debtor for past due amounts by the end of September of 2015.  The Roberts Law Firm currently owes to the Debtor for past due rents the amount of $20,000.  The Roberts Law Firm anticipates making its current rental payments of $2,500 each month and then making an additional payment of $2,500 each month until the arrearages are repaid.  Alternatively, The Roberts Law Firm may pay expenses of the Debtor. The Roberts Law Firm anticipates that it will be able to maintain payment of its rent on a current and consistent basis after confirmation of this chapter 11 plan.  The repayment of the arrearages by the Roberts Law Firm will provide sufficient income to pay all expenses for the Property until the remaining space in the Property is leased.

The Debtor has recently leased another space in the Building for a monthly amount of

$1,250 plus CAM starting in September of 2015.  The new tenant moved into the space as of September 1, 2015.   The Debtor has an offer to lease for a small office for $600 per month.  The new tenant is scheduled to start on October 1, 2015.   By October of 2015, the Debtor has commitments for increased rent of $1,850 per month.  The Debtor does not expect additional major repairs to the Property in order to maintain the Property.  The Roberts Law Firm has recently settled a case and has other settlement offers outstanding and new cases have been retained.  The Roberts Law Firm has sufficient work in process and settlements in process to make the monthly payments and the arrearage payments as stated in this disclosure statement.

In addition, the Debtor needs to complete about $5,000 of repairs for sheetrock, flooring and painting for the remaining unleased space in the main Building.  When repairs for the main Building have been completed, the Debtor will be able to lease the remaining office space.  The Debtor will then accumulate funds for the repair of the apartment, which the Debtor hopes to complete by the summer of 2016.  However, the repairs and leasing of the apartment are not necessary for the ongoing operations of the Debtor and repayments under the plan.

### Assets of the Debtor

The Debtor's principal asset at the time of the bankruptcy filing was, and still is, a commercial office building located at 2555 N. MacGregor Way, Houston, Texas 77004 (the "Property"). Other assets of the Debtor at the time of the bankruptcy filing are set forth in detail on the schedules of the Debtor filed with the Court.

### C.  Source of the Information Contained in This Disclosure Statement

All information in this Plan and Disclosure Statement has been submitted by the Debtor unless otherwise indicated.

### D.  Present Condition and Post-Petition Operations of the Debtor

The Debtor is continuing to operate normally. There are currently three tenants on the Property: Livingston & Flowers, The Roberts Law Firm, Edwards & Sutarwalla, and Carr & Associates (starting October 1). The tenants are current on their rent payments. The Debtor has prospects for the remaining space in the Building.

The post-petition financial operations of the Debtor are set forth in the monthly operating reports filed with the Bankruptcy Court. Attached as Exhibit A are the two most recent of the Debtor's monthly operating reports, which set forth the Debtor's cumulative post-petition operations.

### E.  Anticipated Future of the Debtor and Management of the Reorganized Debtor and Feasibility

The Debtor anticipates continuing to lease commercial office space in the Property and to have additional commercial office space available for lease within six to nine months.

Sean Roberts is the sole member and current managing member of the Debtor. The Debtor expects for Roberts to continue as managing member.

The actual income and expenses together with the projections of income and expenses for the next three years are attached hereto as Exhibit B.

### F.  Claims Summary

The Debtor's schedules reflect claims against the Debtor and the respective priorities. The bar date for filing claims was August 3, 2015. The following table summarizes the claims currently filed against the Debtor:

| Claim # | Creditor | Amount | Status | Collateral |
|---------|----------|--------|--------|------------|
| 1 | Harris County | $10,064.88 | Secured | 2555 N. MacGregor |

|   | 2014 Taxes | | | |
|---|---|---|---|---|
|   | Harris County 2015 Taxes | $9,067.46 | Secured | 2555 N. MacGregor |
| 2 | IRS 2009 – 2015 Taxes | $700.00 | Priority $500 and Unsecured $200 | - |
|   | IRS 2009 – 2010 Taxes | $200.00 | Unsecured | - |
| 3 | Tax Ease Funding, LLC | $88,353.32 | Secured | 2555 N. MacGregor |
| 4 | Post Oak Bank | $500,588.96 | Secured | 2555 N. MacGregor |

The following summary is a list of claims shown in the Schedules of the Debtor but for which no claims have been filed.

| Creditor | Claim Amount | Status | Collateral (if applicable) |
|---|---|---|---|
| Harold Alvin Odom | $16,000-Disputed and unliquidated | No claim, unsecured | |
| Construction & Design | $4,000-Disputed and unliquidated | Mechanics lien but lien never prosecuted-No claim filed | 2555 N MacGregor |
| IO Visual | None known | Lease agreement | None |
| Livingston & Flowers | None known | Lease agreement | None |

## G.  Liquidation as an Alternative to the Proposed Plan

The Debtor is proposing a Chapter 11 Plan of Reorganization to repay its debts. However, if the Plan is not approved by the Creditors and confirmed by the Court, the primary alternative for the Debtor is liquidation under chapter 7 or dismissal of the case.

In a chapter 7 liquidation, the secured creditors will likely foreclose on the Property. The appointment of a chapter 7 trustee by the Court will also result in additional and unnecessary administrative costs. The Debtor is operating in good faith as to all creditors.

Although it is possible that all creditors could be paid in full through a liquidation of the Debtor, such a result would depend on the amount received for the Property, which is the

Debtor's only significant asset. There is no guarantee that the amount received from sale of the Property will result in full payment of all creditors. On the other hand, the Plan proposed by the Debtor would pay all creditors in full out of the future income of the Debtor.

See Exhibit C for a liquidation analysis.

### H. Estimated Administrative Expenses

The Debtor estimates administrative expenses including professional fees and expenses (approximately $25,000) and pre-confirmation U.S. Trustee quarterly fees for this case (approximately $1,200) to be approximately $28,000. The administrative expenses are composed of attorney fees, U.S. Trustee quarterly fees, and a reserve for other possible administrative expenses. The Debtor may also seek to engage an accountant to prepare and file federal tax returns for the Debtor.  The fees for such actions are not known at this time but the Debtor will seek court approval prior to any engagement of an accountant.

### I. Avoidance and Contested Claims

At this time, the Debtor has not identified any preferential transfers or claims that should be disputed.

### J. Summary of Litigation.

To the knowledge of the Debtor, there are no non-bankruptcy litigation matters pending that involve the Debtor. The Debtor may have a claim against IO Visuals, which terminated its lease with the Debtor after the filing of this bankruptcy case.

### K. Risks Posed to Creditors

The risk to creditors is that construction on the Property will take longer than expected, that unexpected major repairs could arise, that the Debtor will be unable to find tenants at the

rental rates required to make the proposed plan payments, and that the Debtor's tenants will fail to make their rent payments as agreed. In such cases, the Debtor may not be able to pay its operating expenses or pay the creditors under the terms of this plan.

### L.  Tax Ramifications

An analysis of the federal income tax consequences of the Plan to creditors requires a review of the Internal Revenue Code of 1986, as amended, the Treasury regulations promulgated thereunder, judicial authority, and current and administrative rulings and practice. The federal income tax consequences to any particular creditor may be affected by the nature of the taxable entity. There may also be state, local, or foreign tax considerations applicable to each creditor. Each creditor is urged to consult his, her, or its accountant or tax lawyer to determine the effect of this Plan upon his, her, or its claim.

### M. Affiliate Relationships

Except for the relationship with the Roberts Law Firm as a tenant, the Debtor has no other known affiliate relationships.

### N.  Absolute Priority Rule

The Bankruptcy Code provides that Mr. Roberts may not retain his ownership of 2555 N. Macgregor L.L.C. unless (i) the holders of all unsecured claims are paid in full with the present value of their claims; or (ii) all classes of unsecured claims vote to accept the proposed plan. The Debtor believes that it is paying all holders in full with the present value of their claims.  If the Debtor fails to prevail on this issue, the plan cannot be confirmed.

*See also*, Confirmation Requirements and Procedures, Section B.2. Treatment of Non-accepting Classes.

**O. Definitions**

"Effective Date" shall be the date that is fifteen (15) days after a final and non-appealed order is entered confirming the Debtor's chapter 11 plan of reorganization.

## II.   PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS

**Plan Concept.** The Debtor's Plan is reorganizing in nature. The Debtor will continue to operate its business and pay its creditors in accordance with the priorities under the Bankruptcy Code.

The Plan provides for the division of claims into eight (8) classes. Each of the claims in each class shall be treated in the manners and methods described below:

Class 1. Administrative Claims as of the Effective Date

Class 1 consists of the Allowed Claims entitled to priority under § 507(a)(1) of the Bankruptcy Code, including fees for services rendered and expenses incurred through the Effective Date by Debtor's counsel and other professionals appointed by the Court for the Debtor, the U.S. Trustee's pre-confirmation quarterly fees, and any other administrative expenses.

The estimated amount of claims in Class 1, including professional fees and U.S. Trustee fees is approximately $28,000. The Debtor estimates administrative expenses in Class 1 for professional fees and expenses of approximately $25,000 for counsel for the Debtor and pre-confirmation U.S. Trustee quarterly fees for this case of approximately $1,200.  The additional amount is an estimate for an accountant to prepare and file tax returns for the Debtor. Except as provided below, each creditor in Class 1 shall be paid in cash on the Effective Date if the creditor's claim has matured or been approved or allowed by the Court, if such approval or

allowance is required. Fees and expenses of counsel for the Debtor will be paid by Sean Roberts to counsel for the Debtor at an agreed amount after confirmation.

The budget does not contain projected payments to counsel for the Debtor, Baker & Associates.  Sean Roberts, as the owner of the Debtor, has agreed to assume and pay these fees separately.   Sean Roberts has agreed to execute and deliver to counsel for the Debtor a promissory note with interest at a rate of five percent (5%) per annum with monthly payments. The promissory note may be secured with liens and security interests on the assets of Sean Roberts, individually.

Except for the payments to counsel for the Debtor for the chapter 11 services, all fees for services rendered and expenses incurred after the Effective Date by court-appointed counsel and other professionals for the Debtor shall be paid by the Debtor or Sean Roberts in the ordinary course of business without the necessity of filing fee applications or seeking approval or allowance of the Court. The reorganized debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6).

Quarterly fees owed to the U.S. Trustee pre-confirmation will be paid on the Effective Date of the Plan. After confirmation and until this case is closed by the Court, the reorganized debtor shall pay quarterly fees to the U.S. Trustee as they accrue and serve on the U.S. Trustee a quarterly financial statement or affidavit of quarterly disbursements.

Class 1 is impaired.

Class 2. Priority Claim of the Internal Revenue Service

Class 2 consists of the priority claims of the Internal Revenue Service. The Internal Revenue Service ("IRS") has filed a proof of claim for $700.00 for income taxes and civil

penalties, of which $500.00 is entitled to priority. The Debtor will pay the amount of the claim entitled to priority to the IRS in full within ninety (90) days after the Effective Date of the Plan. The Debtor will prepare and file tax returns for federal income taxes.  At this time, the Debtor is not aware of other taxes that may be owed.

      Class 2 is impaired.

Class 3. Secured Ad Valorem Property Tax Claim of Harris County and Other Taxing Entities

      Class 3 consists of the secured *ad valorem* property tax claims of Harris County and other taxing entities (collectively, "Harris County"). Harris County has filed a proof of claim asserting $10,064.88 owed for the 2014 tax year and an estimated $9,067.46 owed for the 2015 tax year, both of which are secured by the Property.

      The Debtor will pay $10,369.86 to Harris County at 12% interest in 60 payments of $230.67 per month.

      The Debtor will also pay $9,067.46 to Harris County in 60 monthly payments for 2015 taxes. The monthly payments for 2015 taxes will be $201.70 per month until January 31, 2016. The Debtor will pay any amount remaining on January 31, 2016 at 12% interest, compounded monthly, in equal installments, amortized over the remainder of the 60 months.

      In the event of any failure of the reorganized debtor to timely make its required plan payment to Harris County, or any failure to pay post-petition ad valorem property taxes owed to Harris County prior to delinquency, either of which shall constitute an event of default under the Plan as to Harris County, it shall send notice of such default to the reorganized debtor. If the default is not cured within twenty (20) days of the date of such notice, Harris County may proceed to collect all amounts owed pursuant to state law without further recourse to the

Bankruptcy Court. Harris County is only required to send two (2) notices of default, and upon the third event of default, Harris County may proceed to collect all amounts owed under state law without recourse to the Bankruptcy Court and without further notice.  Notices must be sent by certified mail, return receipt requested and by regular U.S. mail.  Copies of all notices must also be sent to counsel for the Debtor, Baker & Associates.

Harris County's pre- and post-petition liens are retained and remain in full force and effect until the claim of Harris County in this Class is paid in full.

Payments to Class 3 will start on the fifth (5th) day of the first full calendar month following the Effective Date of the Plan.

Class 3 is impaired.

Class 4. Claim of Harold Alvin Odom

Class 4 consists of the claim of Harold Alvin Odom ("Odom").  Odom was listed by the Debtor in Schedule D as a possible secured creditor.  Odom did not file a proof of claim with the bankruptcy court. The Debtor is not aware of any deed of trust, lien or security interest filed by Odom against the Debtor.  The Debtor scheduled Odom's claim as secured in the amount of $16,000 and showed the claim as "disputed" and "unliquidated."  If the Debtor discovers any lien or security interest, the Debtor intends to file an objection to any security or lien on the Property.  Since Odom did not file a claim, the Debtor will not pay any amounts to Odom.

Class 4 is impaired.

Class 5. Secured Claim of Post Oak Bank of Texas, N.A.

Class 5 consists of the secured claim of Post Oak Bank of Texas, N.A. ("Post Oak").  The Debtor initially scheduled the claim of Post Oak in the amount of $475,000.00.  Post Oak Bank

filed a claim for $500,588.96 as of the filing date with interest accruing at $78.9837 per diem after the bankruptcy filing.  The estimated per diem amount through December 29, 2015, is $21,167.63.  The claim is secured by the Property.

The Debtor will pay the unpaid principal amount of $500,588.96 plus the per diem interest after the bankruptcy filing. After the bankruptcy filing, the Debtor has made payments to Post Oak Bank and will continue to make the post petition payments to Post Oak Bank until the Effective Date. Such post petition payments will be used to reduce the post petition interest amounts. The amount due to Post Oak Bank through December 29, 2015, is estimated to be $521,756.59 less the payments made by the Debtor to Post Oak Bank during the bankruptcy case of approximately $19,200.  The estimated amount due to Post Oak Bank as of December 29, 2015, for the Post Oak Bank loan (not including the Tax Ease loan) is $502,556.  The loan will accrue interest at six percent (6.0%) interest per annum with an amortization of 20 years.  The monthly payment amount is estimated to be $3,600.

The obligations of the Debtor in this class 5 to Post Oak Bank will have a "balloon" payment with all principal, interest and any fees or costs and expenses due and payable in full four (4) years from the Effective Date of this plan.

Additionally, Post Oak Bank agreed to pay the Debtor's Tax Ease loan in exchange for the Debtor's agreement to an increase in Post Oak Bank's claim of $100,952.14, with said amount representing payment in full of the Tax Ease loan.  Post Oak Bank has amended its proof of claim to represent this increase.  Accordingly, the Debtor will also pay the Tax Ease claim to Post Oak Bank, which was $100,952.14 as of December 23, 2015, with interest accruing at six percent (6%) interest per annum effective as of December 23, 2015, the date on which Post Oak

Bank paid the Tax Ease loan.  The Debtor will pay the amount of $1,408.88 monthly to Post Oak Bank, and such payments will be applied as set forth in the loan documents currently existing between the Debtor and Post Oak Bank.

The Debtor will execute renewal loan documents if requested by Post Oak Bank.

The Debtor has been making payments to Post Oak Bank prior to the Effective Date. Payments to Class 5 will start on the fifth (5th) day of the first full calendar month following the Effective Date of the Plan.

Class 5 is impaired.

Class 6. Secured Claim of Tax Ease Funding, L.P.

Class 6 consists of the secured claim of Tax Ease Funding, L.P. ("Tax Ease"). Tax Ease has filed a proof of claim with the bankruptcy court in the amount of $88,353.32. The claim is secured by the Property.

Post Oak Bank has paid to Tax Ease the amount of the claim of Tax Ease. Tax Ease has accepted payment from Post Oak Bank.  As a result, the Debtor will owe such amounts to Post Oak Bank and not Tax Ease.  Tax Ease informed the parties that the payoff of the Tax Ease loan was $100,952.14 as of December 23, 2015.  Tax Ease has included attorneys' fees of $3,839.48. The Debtor does not object to the requested fees.  The payoff amount includes the attorneys' fees.

Tax Ease Proof of Claim No. 3 is supported by a Promissory Note executed by the Debtor on July 11, 2014, in the original principal amount of $80,747.49 (the "Note").  The Note is secured by a Deed of Trust and Assignment of Leases and Rents dated April 6, 2015 and tax liens transferred to Tax Ease pursuant to a Certified Statement of Transfer of Tax Lien and

Sworn Document Authorizing Transfer of Tax Lien (together the "Security Documents").

The payment to be made by the Debtor to Tax Ease was $1,408.88.  The Debtor will pay such amount monthly to Post Oak Bank under the Post Oak Bank claim in class 5.

The Debtor will make no payments to Tax Ease.

Class 6 is impaired.

Class 7.  Claim of Construction and Design, L.L.C.

Class 7 consists of the claim of Construction and Design, L.L.C. ("Construction and Design"). Construction and Design did not file a proof of claim with the bankruptcy court. The Debtor scheduled the claim of Construction and Design as a secured claim in the amount of $4,000 and as "disputed" and "unliquidated."  Although Construction and Design filed a lien against the Property, it has failed to timely act on the lien. Therefore, the Debtor asserts that the lien of Construction and Design is ineffective and that Construction and Design should be treated as an unsecured creditor.  After confirmation, the Debtor intends to request from the Bankruptcy Court an order determining that the lien of Construction and Design is void and terminated and that no amounts are owed to Construction and Design.

If amounts are determined to be owed to Construction and Design, any secured amounts will be paid over a period of 5 years.   Any unsecured amounts shall be paid in Class 8, but paid quarterly with no interest over a period of five (5) years.

Class 7 is impaired.

Class 8. Unsecured Claims

Class 8 consists of the unsecured claims of the IRS. The IRS has filed a proof of claim

with the bankruptcy court asserting an unsecured amount owed of $200.00.

The IRS is the only known unsecured creditor of the Debtor. No other proofs of claim for unsecured debts owed by the Debtor have been filed with the bankruptcy court.

The Debtor will pay the amounts to Class 8 within two (2) days after the Effective Date.

Class 8 is impaired.

Equity Interests of the Debtor

Sean Roberts is the owner of 100% of the equity of the Debtor.  This plan proposes for Mr. Roberts to retain 100% of the equity of the Debtor.  The Debtor and Mr. Roberts believe that he may continue to own 100% of the equity since the plan proposes to pay all creditors 100% of the allowed claims under the plan.  The Debtor believes that the payment of 100% to all allowed claims of the creditors of the Debtor satisfies the absolute priority rule.

## ACCEPTANCE OR REJECTION OF PLAN

Each impaired class of Claims shall be entitled to vote separately to accept or reject this Plan unless that class receives no distribution under the Plan. Any class receiving no distribution is deemed to have rejected the Plan. Any unimpaired class of Claims shall not be entitled to vote either to accept or to reject this Plan and is deemed to have accepted the Plan. Each creditor should read this plan and disclosure statement, then complete and return the attached ballot.

Your acceptance of the Plan is important. In order for the Plan to be deemed "accepted" by Creditors and holders of interests, at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Claims voting and fifty-one percent (51%) in number of Allowed Claims voting in each Class of Claims must accept the Plan. Whether or not you expect to be present at the hearing, you are urged to fill in, date, sign, and properly mail the Ballot for Accepting or Rejecting Plan of Reorganization to Mr. Reese W. Baker, Attorney for Debtor, 5151 Katy

Freeway, Ste 200, Houston, Texas  77007.

IF ANY CLASS REJECTS THE PLAN, THE DEBTOR MAY SEEK TO "CRAMDOWN" THE CONFIRMATION OF THE PLAN PURSUANT TO 11 U.S.C. §1129(b). THE BANKRUPTCY CODE ALLOWS THE DEBTOR TO REQUEST THE COURT TO CONFIRM THE PLAN NOTWITHSTANDING THE REJECTION OF ANY CLASS OR CLASSES OF CREDITORS IF THE DEBTOR CAN DEMONSTRATE THE (i) THE PLAN DOES NOT DISCRIMINATE UNFAIRLY AND (ii) THE PLAN IS FAIR AND EQUITABLE WITH RESPECT TO EACH CLASS OF CLAIMS OR INTERESTS THAT IS IMPAIRED AND HAS NOT ACCEPTED THE PLAN. IN ORDER TO "CRAMDOWN" THE PLAN, THE DEBTOR WILL HAVE TO DEMONSTRATE TO THE BANKRUPTCY COURT AT A HEARING THAT THESE TWO STANDARDS HAVE BEEN SATISFIED. SUCH HEARING WOULD BE PART OF THE CONFIRMATION HEARING ON THE PLAN AND ALL CREDITORS MAY BE PRESENT AND WOULD HAVE AN OPPORTUNITY TO PARTICIPATE IN SUCH HEARING.

## EXECUTORY CONTRACTS

Upon confirmation of this Plan, the Debtor shall be deemed to have assumed the following executory contracts:

1.     Real estate lease with Livingston & Flowers.

2.     Real estate lease with The Roberts Law Firm.

3.     Newly executed leases on the Building.

All other executory contracts and leases are deemed rejected by the Debtor as of the Effective Date.

## JURISDICTION OF THE BANKRUPTCY COURT

The Bankruptcy Court shall retain exclusive jurisdiction over the interpretation and implantation of the plan through the date of confirmation of the plan. Thereafter, the Bankruptcy Court will retain non-exclusive jurisdiction to the maximum extent permitted by law.

## CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the Plan, without counting the votes of insiders; the Plan must distribute to each creditor at least as much as the creditor would receive in a chapter 7 liquidation case, unless the creditor votes to accept the Plan; and the Plan must be feasible. These requirements are *not* the only requirements listed in §1129, and they are not the only requirements for confirmation.

### A.  Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor has a right to vote for or against the Plan only if that creditor has a claim that is both (1) allowed or allowed for voting purposes; and (2) impaired.

In this case, the Debtor believes that all classes (1 through 8) are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

### *1. What Is an Allowed Claim?*

Only a creditor with an allowed claim has the right to vote on the Plan. Generally, a claim is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the

claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim, unless an objection has been filed to such proof of claim. When a claim is not allowed, the creditor holding the claim cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

The deadline for filing a proof of claim was August 3, 2015.  No claims have been filed after the bar date as of the date of this Disclosure Statement.

### 2. What Is an Impaired Claim?

As noted above, the holder of an allowed secured claim has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in §1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. Who is **Not** Entitled to Vote?

The holders of the following types of claims are *not* entitled to vote:

- holders of claims that have been disallowed by an order of the Court;
- holders of other claims that are not "allowed claims" (as discussed above), unless they have been "allowed" for voting purposes;
- holders of claims in unimpaired classes;
- holders of claims entitled to priority pursuant to §§507(a)(2), (a)(3), and (a)(8) of the Code;
- holders of claims in classes that do not receive or retain any value under the Plan; and
- administrative expenses.

***Even if you are not entitled to vote on the Plan, you may have a right to object to the confirmation of the Plan.***

### 4. Who Can Vote in More Than One Class?

A creditor whose claim has been allowed in part as a secured claim and in part as an

unsecured claim, or who otherwise holds claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### B.  Votes Necessary to Confirm Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes.

#### 1. Votes Necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

#### 2. Treatment of Nonaccepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by §1129(b) of the Code, including the "absolute priority rule." Under the absolute priority rule, the Court may confirm the Plan over the failure of a class to vote for the Plan provided that for a class of unsecured claims, the Plan must provide each holder of a claim of such class receive or retain on account of such claim property of a value, as of the Effective Date of the Plan, equal to the allowed amount of the claim of the creditor, or the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the Plan on account of such junior claim or interest any property. The Debtor believes that the Plan complies with the absolute priority

rule in the Code.

A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of §1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

*You should consult your own attorney if a "cram down" confirmation will affect your claim, as the variations on this general rule are numerous and complex.*

## EFFECT OF CONFIRMATION

As provided for in Section 1141 of the Bankruptcy Code, the provisions of Debtor's Plan shall bind the Debtor and any creditor under the Plan, whether or not the claim of the creditor is impaired under the Plan and whether or not the creditor has accepted the Plan. As provided for in Section 1141(b) of the Bankruptcy Code, confirmation of Debtor's Plan vests all of the property of the estate in the Debtor. After confirmation of the Debtor's Plan, all property of the Debtor dealt with by the Plan (which includes all property of the Debtor) is free and clear of all liens, claims, and interests of creditors and equity security holders, except to the extent provided in this Plan.  So long as the payments proposed by this plan are made by the Reorganized Debtor, no creditor may seek to collect any amounts from the Debtor that were owed prior to the filing of the chapter 11 case or are provided in this plan.

The rights afforded in the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all claims of any nature whatsoever occurring on or prior to the confirmation date, including any interest accrued thereon from and after the petition date, against Debtor and Debtor in Possession, or any of its assets or properties. Except as otherwise provided herein, upon the payment of the amounts provided in this plan, in accordance with Section 1141

of the Code, all such claims against Debtor and Debtor in Possession shall be satisfied, discharged, and released in full. Except as otherwise provided herein, all creditors shall be precluded from asserting against Debtor any other or further claim based upon any act or omission, transaction, or other activity of any kind or nature occurring on or prior to the confirmation date.

## DISPUTED CLAIMS; OBJECTIONS TO CLAIMS

The Debtor may file an objection to any disputed Claim within sixty (60) days from the Effective Date of the Plan, including without limitation any claims that have not been filed as of the date of this plan or confirmation of the plan. The Debtor reserves the right to object to any claim filed after this plan and confirmation of this plan.  Objections not filed within the foregoing time period shall be deemed waived, except to the extent that the grounds for the objection could not have been discovered prior to the expiration of the sixty (60) day time period. If an objection is filed to any claim, payments on the claim will not begin until after an Order of the Court allowing the claim has become final.

The Debtor reserves the right to object to the claim of Post Oak Bank at this time.

## FEASIBILITY TO PERFORM AND IMPLEMENTATION OF THE PLAN

The Debtor believes this Plan is feasible. The Debtor will continue to operate its business. The Debtor believes that it will be able to secure dependable tenants and that its current tenants will be able to meet their on-going rent obligations. The Debtor does expect major repairs in the near future. The Debtor believes that future rent will produce sufficient funds to pay all administrative, allowed secured claims, and allowed unsecured claims as provided in the Plan. The main source of funding of the Plan will come from the rental income from the Debtor's continued operation of the Property. The projections attached as Exhibit B demonstrate the

feasibility of the plan.

## **EXHIBITS**

A.     **Monthly Operating Reports for the two months prior to the date of this Plan**

B.     **Revenue projections and payments for three (3) years following the Effective Date.**

C.     **Liquidation analysis under Chapter 7**

D.     **Statement of Financial Affairs and Schedules A through H and Summary of Schedules, with amendments**


[Remainder of this page intentionally left blank.]

Dated: December 28, 2015

2555 N. MacGregor, L.L.C.

By: _____

Sean Roberts,
Managing Member of
2555 N. MacGregor, L.L.C.

ATTORNEY FOR THE DEBTOR:

*/s/ Reese Baker*
Reese Baker
TX Bar No. 01587700
Baker & Associates
5151 Katy Freeway, #200
Houston, Texas 77007
(713) 869-9200
(713) 869-9100 Fax

        Counsel for the Debtor has made no independent
investigation of the information contained herein.

4817-2475-2940, v.  1